Thomas MAY

v.

**PENN T.V. & FURNITURE CO., INC., et al.**

**No. 94–512–MP.**

Supreme Court of Rhode Island.

Dec. 6, 1996.

Robert J. Cosentino, Providence, for Plaintiff.

Mark P. Dolan, James S. D'Ambra, Providence, for Defendant.

## OPINION

FLANDERS, Justice.

We recently warned that in a lawsuit "appearances can be deceiving."[1] This case presents an object lesson in just how deceptive they can be.[2]

### Facts

This certiorari matter is here on the petition of the plaintiff, Thomas May (May), to review the dismissal of his complaint against defendant Joseph Merolla III (Merolla) for lack of service of process. In February 1991 May filed and served a complaint against defendant Penn T.V. & Furniture Co., Inc. (Penn), for personal injuries May suffered in a November 1989 auto accident with a truck driven by an unidentified Penn employee. After May ascertained the employee's identity, he amended his complaint to add Penn's truck driver, Merolla, as a defendant. But before May could even attempt to serve Merolla with a copy of the summons and amended complaint, the lawyer for Penn filed and served a joint answer on behalf of Penn and Merolla.[3] Notably, this pleading failed to

---

1. *Parrillo v. Chalk*, 681 A.2d 916, 917 (R.I.1996).

2. *See, e.g.,* William Shakespeare, *The Merchant of Venice*, act 3, sc. 2:
   "The world is still deceived with ornament. In law, what plea so tainted and corrupt But, being seasoned with a gracious voice, Obscures the show of evil? * * *
   "There is no vice so simple but assumes Some mark of virtue on his outward parts."

3. The reason proffered by defense counsel for answering before plaintiff even attempted to serve Merolla with a copy of the summons and amended complaint was that he wanted to avoid a default. However, the obligation to answer does not arise until *after* service of the summons and complaint. Super.R.Civ.P. 12(a)(1)(A). Thus, there can be no default for failing to answer a complaint until after service occurs or is accepted on behalf of a defendant. Neither event occurred here with respect to Merolla before the joint answer was filed.

include the affirmative defense of insufficiency of service of process on Merolla.

Without pausing to look this gift horse in the mouth or to consider "what a goodly outside falsehood hath,"[4] May decided to ride the joint answer for all it appeared to be worth. Thus, he treated this pleading as a general appearance by defendants' lawyer on behalf of both Merolla and Penn[5] and concluded that its filing and service constituted a waiver by Merolla of any insufficiency-of-service-of-process defense.[6] Consequently May never attempted to serve Merolla according to the various methods specified in Rule 4 of the Superior Court Rules of Civil Procedure.

But just as "'[a]ll that glisters is not gold,'"[7] things were not as they seemed from a reading of the joint answer. Unbeknownst to May or his counsel, Merolla had left Penn's employ after the accident and departed for parts unknown. Indeed, Merolla apparently had no knowledge of the lawsuit at any time during its pendency. Most significantly, he never engaged or authorized Penn's attorney to accept service for him, to represent him in the lawsuit, or to file an answer on his behalf. Thus, insofar as the joint answer purported to constitute a general appearance by Penn's attorney on behalf of Merolla, it was "false than vows made in wine."[8]

Nonetheless, for two years the lawsuit proceeded as if appearances were reality. Not until May filed a motion to default Merolla for failing to respond to discovery requests did Penn's attorney doff his Merolla mask

and resolve to "[l]et be be finale of seem."[9] Unable to locate his purported client, Penn's attorney moved to amend the joint answer to include the defense of insufficiency of service of process on Merolla. A motion justice granted this motion. Thereafter, still unable to locate or to speak with Merolla, this same defense attorney moved on Merolla's behalf to dismiss the complaint for lack of service of process. This motion was granted as well, and the matter is now here on certiorari to review the propriety of the dismissal.[10]

## What Is Being Reviewed

■■■ Our review on a writ of certiorari is restricted to an examination of the record "to determine whether any competent evidence support[s] the lower court's decision or whether the lower court made any errors of law in that decision." *Cardarelli v. Department of Employment and Training, Board of Review*, 674 A.2d 398, 399 (R.I.1996). Furthermore, "[o]ur review is limited to the question that appears in the petition for the writ." *Walsh v. Rhode Island Department of Transportation*, 637 A.2d 774, 775 (R.I.1994). Finally, we shall not review matters *de hors* the record in a certiorari proceeding. *Lynch v. King*, 120 R.I. 868, 874, 391 A.2d 117, 121 (1978).

■■■ In this case we emphasize at the outset what we are *not* reviewing. No petition for certiorari was filed requesting review of the Superior Court's decision to grant the motion to amend the joint answer to include an insufficiency-of-service-of-process defense. Moreover, no transcript of the hearing on

4. William Shakespeare, *The Merchant of Venice*, act 1, sc. 3.

5. Among other cases, May relied on *Mack Construction Co. v. Quonset Real Estate Corp.*, 84 R.I. 190, 194, 122 A.2d 163, 164 (1956) ("[i]nasmuch as it is well settled that by a general appearance a defendant submits himself to the jurisdiction of the court, any failure to serve him with process becomes immaterial"). *See also* 1 Kent, *R.I. Civ. Prac.* § 12.2 at 109 (1969) ("a defendant who simply answers to the merits of a claim thereby consents to the jurisdiction of the court").

6. *See* Super.R.Civ.P. 12(h) ("[a] party waives all defenses and objections which the party does not present either by motion as hereinbefore provided or, if the party has made no motion, in the

party's answer" except for certain enumerated defenses that do not include insufficiency of service of process).

7. William Shakespeare, *The Merchant of Venice*, act 2, sc. 7.

8. William Shakespeare, *As You Like It*, act 3, sc. 5.

9. Wallace Stevens, "The Emperor of Ice-Cream," in *The Collected Poems of Wallace Stevens* 64 (1954).

10. Between the filing of the certiorari petition and the oral argument to this court, May's claims against Penn proceeded to a jury trial in which May obtained a verdict of $8,000 against Penn.

that motion has been provided to us by May, nor has he questioned in his petition for certiorari the propriety of the granting of that motion. Indeed, without providing us with a transcript of the hearing, he would be hard pressed to do so. "[A] party seeking to have this court review alleged error, has the burden of furnishing us with so much of the record as may be required to enable this court to pass on the error alleged." *Chariho Regional High School District v. Town Treasurer of Hopkinton,* 109 R.I. 30, 45, 280 A.2d 312, 320 (1971). "If the appealing party fails to provide us with a sufficient transcript, we cannot perform a meaningful review and have no choice but to uphold the trial justice's findings." *In re Kimberly and James,* 583 A.2d 877, 879 (R.I.1990); *see also Kelaghan v. Roberts,* 433 A.2d 226, 232 (R.I.1981) (court cannot pass upon asserted error without adequate transcript); *Watmough v. Watmough,* 430 A.2d 1059, 1061 (R.I.1981) (impossible to review discretionary decision with an inadequate transcript).

Thus, we review here solely the grant of the dismissal motion and not the previous motion justice's decision allowing the amendment motion. However, for reasons that will become apparent, even were we able to review the granting of the earlier amendment motion, our disposition of this case would be the same.

### Analysis

■ Because defense counsel filed a joint answer and defended the action for over two years ostensibly on behalf of both Penn and Merolla, May argues that Merolla thereby waived his right to have a summons and complaint served upon him. *See* Super.R.Civ.P. 12(h). May further argues that dismissal of the complaint two years after the joint answer was filed was inequitable because he reasonably relied on the statements that were implicit in defendants' joint answer that Merolla was represented by counsel of record with authority to enter an appearance on his behalf. Finally, May asserts that it should not be a plaintiff's responsibility to locate and serve a defendant after counsel for that defendant has already filed and served an answer that does not contain any insufficiency-of-service-of-process defense. In effect May claims that we should treat the joint answer as the legal equivalent of a written acceptance of service of process on behalf of Merolla by his attorney and hold Merolla to the service waiver given by his "lawyer."

Defense counsel responds by pointing out that his actions as an attorney in answering the case on behalf of Merolla cannot possibly bind Merolla since he has in fact never met this absent "client," let alone obtained his authority to represent him in this lawsuit as his attorney; that plaintiff never served Merolla with any process; that the court's granting of the defense's motion to amend the joint answer to include the insufficiency-of-service-of-process defense relates back to the filing of the original joint answer; and that after successfully amending the joint answer to include this defense, he was entitled to move for dismissal on that basis.

At the time of this dispute, Super.R.Civ.P. 4 did not specify a time limit for completing service of process.[11] However, "this court has consistently held that service of process must be effectuated within a reasonable time following the filing of the complaint, unless a plaintiff can demonstrate that a longer delay was excusable." *Catone v. Multimedia Concepts, Inc.,* 483 A.2d 1081, 1083 (R.I.1984).

Because Merolla remained a stranger to this action (defense counsel stating that "I fairly can't represent a client I never met") as of the dismissal motion hearing and because May's counsel admitted that he had never served Merolla with a copy of the summons and compliant, we believe that it would have been error for the trial court not to dismiss Merolla from the action. *See Batchelder v. Mantak,* 136 Vt. 456, 392 A.2d 945, 948–49 (1978) ("[a]lthough a general appearance by an attorney cures all defects of service of process, * * * when the purported clients have never been given any notice of the pendency of the suit, as is the case here,

---

11. Under the current rule, an action filed against an *unserved* defendant shall be dismissed without prejudice if the plaintiff has not served the summons and complaint upon that defendant within 120 days after commencement of the action and if the plaintiff cannot show good cause why such service was not made within that period. Super.R.Civ.P. 4(*l*).

no unauthorized appearance binds them"); *see generally* 6 C.J.S. *Appearances* § 14 (1975).[12]

In these circumstances it matters not that defense counsel lacked authority or standing to move even for dismissal on Merolla's behalf. For even if the complaint had been allowed to proceed to judgment against Merolla, such a result would not have been binding because the court would be duty bound to correct the situation no matter when or how it learned of the truth. *See Lamarche v. Lamarche*, 115 R.I. 472, 475, 348 A.2d 22, 23 (1975) ("It is the duty of the court to remove the cloud [of a void judgment] on its own motion whenever it is brought to its attention. It matters not how, or in what way, or at what time the objection to its presence is brought to the court's attention. Since it is void, it has no efficacy at any time."). Indeed, any such judgment would have been subject to vacation by Merolla for the asking. *See* G.L.1956 § 9–21–2(a)(4) (allowing courts to relieve a party or his legal representative from a final judgment that is void); Super.R.Civ.P. 60(b)(4) (same); *Shannon v. Norman Block, Inc.*, 106 R.I. 124, 132, 256 A.2d 214, 219 (1969) ("[i]f the judgment is void, the movant has an unqualified right to relief").

We acknowledge "that an attorney is an agent employed by a party to a case to manage the same for him. His contract of employment implies that the attorney is authorized to take such steps in representing his client as he may deem legal, proper and necessary, and his acts in that respect, in the absence of fraud, must be regarded as the acts of his client." *Cohen v. Goldman*, 85 R.I. 434, 438, 132 A.2d 414, 416 (1957) (client who engages an attorney to bring a lawsuit on his behalf will be bound by a settlement entered into by that attorney despite the attorney's lack of actual authority to settle the case). But here there was no contract of employment or other engagement between Merolla and Penn's attorney, let alone any authorization from Merolla that would have allowed Penn's lawyer(s) to file pleadings on his behalf or otherwise to represent him in this lawsuit. Indeed, because Merolla had no knowledge of the lawsuit, Merolla did nothing to clothe Penn's lawyer with any apparent authority to represent him, to appear on his behalf, or to waive service of process. Thus, absent actual service of process on Merolla, plaintiff cannot possibly hold him responsible for the actions of a lawyer he never engaged in a lawsuit about which he was never notified.

Finally, even though we agree that a plaintiff may have no legal "responsibility" to locate a defendant who has apparently appeared in an action by his lawyer without raising any service-of-process defense, this case dramatically underscores the risk, however infrequently realized, in relying upon a mere pleading prepared by opposing counsel . as proof that an unserved defendant is duly represented in the lawsuit. Indeed, even the time-honored custom of defense lawyers accepting service of process on behalf of their purported clients subjects a plaintiff to the risk that if the defense lawyer in fact has no actual authority to represent such a defendant or to accept service of process, the plaintiff will be unable to obtain, much less enforce, any judgment against such a defendant.

In sum, we cannot fault the plaintiff or his counsel for failing to attempt service of process on the defendant Merolla after a lawyer purporting to represent him filed an answer on his behalf without raising lack of service as a defense. Lawyers who file pleadings, who accept service of process, or who enter their appearances in lawsuits supposedly on

12. We also note that plaintiff does not suggest that Merolla could have been located and served after the amended complaint had been filed if plaintiff had not been lulled into believing that Merolla had waived service of process. Rather, it appears that because of Merolla's postaccident departure from the scene and from his previous employment at Penn to parts unknown, locating Merolla and serving him with process was proba- bly a lost cause from the outset. Although we concede the possibility that defense counsel's misrepresentation to the court and to plaintiff's counsel that he was Merolla's attorney in this case may have allowed Merolla's trail to grow cold and thereby prejudiced plaintiff's ability to find Merolla and serve him with process, the record is silent on this point.

behalf of clients "should be what they seem." [13]  But by the same token, lawyers unwilling to risk spurious judgments based on phantom lawyer/client relationships might well decide to "trust but verify" by serving all parties defendant with legal process before swallowing such alluring bait as was presented here.  After all, sometimes "[t]hings sweet to taste prove in digestion sour." [14]  Here, fundamental due-process considerations [15]—and bedrock principles of agency law [16]—prevent us from punishing an unserved party defendant for the misdeeds of a lawyer he never engaged in a lawsuit about which he was never notified.

## Conclusion

For the reasons set forth above, the plaintiff's petition for certiorari is denied, the writ previously issued is quashed, and the judgment of the Superior Court is affirmed.  The papers of the case shall be remanded to the Superior Court with our decision endorsed thereon.

**13.** William Shakespeare, *Othello*, act 3, sc. 3 ("Men should be what they seem, Or those that be not, would they might seem none."); *see also* William Shakespeare, *The Life of Timon of Athens*, act 4, sc. 3 ("Crack the lawyer's voice, That he may never more false title plead Nor sound his quillets [quibbles] shrilly.").

**14.** William Shakespeare, *Richard II*, act 1, sc. 3.

**15.** *E.g., Lamarche v. Lamarche*, 115 R.I. 472, 474, 348 A.2d 22, 23 (1975) ("[a] valid judgment cannot be entered against an individual who has not received any notice which would have afforded an opportunity for the concerned individual to show cause against its entry").

**16.** *Parrillo*, 681 A.2d at 919 (" 'Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.' * * * [T]o create this authority, the principal (that is, the client) must manifest to the third party (that is, the opposing party and/or its counsel) that he or she 'consents to have the act done on his [or her] behalf by the person purporting to act for him [or her].' ").